UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JERRY EDWARDS,** | } |
| Plaintiff, | } |
| v. | } Case No.: 4:14-cv-01802-MHH |
| **CAROLYN W. COLVIN,** Commissioner of the Social Security Administration, | } |
| Defendant. | } |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff Jerry Edwards seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied his claims for a period of disability and disability insurance benefits. After careful review, the Court affirms the Commissioner's decision.

## I.  PROCEDURAL HISTORY

Mr. Edwards applied for a period of disability and disability insurance benefits on September 29, 2010. (Doc. 7-3, p. 47). Mr. Edwards alleges that his disability began on August 16, 2010. (Doc. 7-3, p. 47). The Commissioner initially denied Mr. Edwards's claims on December 24, 2010. (Doc. 7-3, p. 47). Mr. Edwards requested a hearing before an Administrative Law Judge (ALJ).

(Doc. 7-3, p. 47). The ALJ issued an unfavorable decision on April 2, 2013. (Doc. 7-3, p. 44). On August 26, 2014, the Appeals Council declined Mr. Edwards's request for review (Doc. 7-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence" or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If the ALJ's decision is supported by substantial evidence, the Court "must affirm even if the evidence preponderates against the

Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Applying step one of the evaluation process, the ALJ found that Mr. Edwards has not engaged in substantial gainful activity since August 16, 2010, the alleged onset date. (Doc. 7-3, p. 49). At step two, the ALJ determined that Mr.

3

Edwards suffers from the following severe impairments: degenerative disc disease, disc bulge, conductive hearing loss, and hypertension. (Doc. 7-3, p. 49). The ALJ also determined that Mr. Edwards is obese, but his obesity is not a severe impairment. (Doc. 7-3, pp. 50–51). Mr. Edwards alleged disability based on depression, but the AJL found "the existence of depression or a stress disorder [could not] be medically determined." (Doc. 7-3, pp. 49–50).

Proceeding to step three, based on a review of the medical evidence, the ALJ concluded that Mr. Edwards does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, pp. 50–51). Therefore, the ALJ examined Mr. Edwards's residual functional capacity. The ALJ determined that Mr. Edwards has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) except he has a bilateral mixed hearing loss that is conductive, but he functions well with a bone anchored . . . hearing aid and he can converse at normal conversation levels; he needs a job with excessive noise that is moderate in nature, with no high frequencies that would be shrieking in the ear; . . . [h]is overhead reaching is limited to no more than 10 pounds frequently, but he can occasionally lift more; he would need the ability to have a sit/stand option; he would need minimal communication with coworkers and the public, and he would be able to recognize safety factors.

(Doc. 7-3, p. 51).

Based on this RFC, at step four of the evaluation process, the ALJ concluded that Mr. Edwards is not able to perform his past relevant work as a hosiery mill

knitter and a material handler.  (Doc. 7-3, p. 55).  Finally then at step five, relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Mr. Edwards can perform, including product examiner/inspector, product assembler, and production line worker.  (Doc. 7-3, p. 56).  Accordingly, the ALJ determined that Mr. Edwards has not been under a disability within the meaning of the Social Security Act.  (Doc. 7-3, p. 56).

**IV.   ANALYSIS**

Mr. Edwards argues that he is entitled to relief from the ALJ's decision because (1) the ALJ used medical terminology when describing Mr. Edwards's back condition to the vocational expert, instead of specifying the concrete consequences of that condition for Mr. Edwards's ability to work; (2) the ALJ failed to specify for the vocational expert the nature of the sit/stand option that Mr. Edwards requires; and (3) the ALJ's finding that Mr. Edwards has the RFC to perform jobs at the sedentary level is not supported by substantial evidence.  (Doc. 11, pp. 15–18).  The Court examines each issue in turn.

A.   Description of Mr. Edwards's Back Condition

In formulating a hypothetical for the vocational expert, the ALJ described an individual who "would have mild degenerative lumbar disc disease with some bulging.  There would be some bilateral foramenal stenosis by the L4/L5 level but it would be minimal disc bulge and the L5/S1 would be preserved.  It would be

normal lordotic alignment and soft tissues would be unremarkable." (Doc. 7-3, p. 87). Mr. Edwards objects to the ALJ's "medical dissertation" because he believes the hypothetical failed to convey the vocational consequences of his back condition to the vocational expert. (Doc. 11 pp. 14–15). Mr. Edwards asserts that—without interpretation by a medical expert—the medical terminology in the ALJ's hypothetical did not provide the vocational expert with an accurate representation of his (Mr. Edwards's) impairments. (Doc. 11, pp. 13–15).

Mr. Edwards's argument ignores the distillation of the medical information with which the ALJ concluded the hypothetical to the vocational expert. After describing a medical condition that mirrors Mr. Edwards's, the ALJ asked the vocational expert to base her answer on an "individual able to perform at a light level as defined within the Act but I would limit overhead reaching to no more than 10 pounds frequently, occasionally more." (Doc. 7-3, p. 87). Thus, the ALJ provided the vocational expert with concrete vocational consequences resulting from the medical condition described in the hypothetical.

The authority that Mr. Edwards cites supports the conclusion that the ALJ properly constructed the hypothetical for the vocational expert. *See Thomas v. Astrue*, No. 07-3313 PJSRLE, 2008 WL 2942879, at *7, *20–21 (D. Minn. July 25, 2008) (finding that a similar hypothetical was correctly formulated for a vocational expert). While a "hypothetical does not need to include medical

terminology from the Record," inclusion of medical terminology in a hypothetical does not render a question improper. *Id.* at *20.

    B.    Sit/Stand Option

Next, Mr. Edwards objects that the ALJ's hypothetical questions to the vocational expert failed to provide sufficient detail regarding a sit/stand option. (Doc. 11, pp. 15–17). According to Mr. Edwards, the hypotheticals were defective and require reversal because the ALJ did not include in the hypotheticals the frequency with which Mr. Edwards would require a sit/stand option. (Doc. 11, p. 16). While including definite sit/stand intervals in a hypothetical to a vocational expert might be the better practice, the record demonstrates that Mr. Edwards's sitting and standing limitations were presented to the vocational expert through Mr. Edwards's own testimony.

During the testimony he provided with the vocational expert present, Mr. Edwards stated, "I'm laying most of the day with my legs propped up and when I get up I have to walk around a little bit and I can't walk too far." (Doc. 7-3, p. 78). The ALJ followed up on questions from Mr. Edwards's attorney by asking Mr. Edwards how long he could sit. (Doc. 7-3, p. 85). Mr. Edwards replied, "Usually about 15 or 20 minutes." (Doc. 7-3, p. 85). Mr. Edwards also stated he could walk for roughly five minutes after sitting and spent his days alternating sitting on a couch and walking. (Doc. 7-3, pp. 84–85).

At the beginning of the examination of the vocational expert, the ALJ confirmed that the vocational expert had "reviewed the documentary evidence and listened to the oral testimony." (Doc. 7-3, p. 86); *cf. Easterling v. Astrue*, No. 3-10-CV-0963-BD, 2011 WL 4424389, at *4 (N.D. Tex. Sept. 22, 2011) (finding a hypothetical defective because the vocational expert acknowledged being unable to take note of all the limitations introduced through oral testimony). The ALJ added a sit/stand option to the hypothetical posed to the vocational expert because of Mr. Edwards's oral testimony. (Doc. 7-3, pp. 88–89). "Although the ALJ failed to specify the frequency that [Mr. Edwards] needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at [Mr. Edwards's] own volition." *Williams v. Barnhart*, 140 Fed. Appx. 932, 937 (11th Cir. 2005). Therefore, the hypothetical posed by the ALJ was not defective, and the vocational expert's testimony supports the ALJ's determination that Mr. Edwards is capable of performing jobs that exist in significant numbers in the national economy. (Doc. 7-3, p. 55).

    C.    RFC to Perform Light Work

Finally, Mr. Edwards contends the ALJ erred by finding he has the RFC to perform light work and the sedentary jobs identified by the vocational expert. (Doc. 11, pp. 17–18). Under 20 C.F.R. § 404.1567(b), an individual who can perform light work "can also do sedentary work, unless there are additional

limiting factors such as loss of fine dexterity or inability to sit for long periods of time." According to Mr. Edwards's characterization of the regulation, the ALJ's finding regarding a sit/stand option renders him unable to perform either light or sedentary work. (Doc. 11, pp. 17–18).

Mr. Edwards misreads 20 C.F.R. § 404.1567(b). The exception in the regulation for individuals unable to sit for long periods of time means those individuals will not be presumed to be able to perform sedentary work, even though they are capable of performing light work. The exception does not mean that an individual who cannot sit for long periods will never be able to perform a job classified as sedentary. *See* SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983) ("In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.").

As shown by the record, the ALJ did not presume Mr. Edwards's ability to perform sedentary work. Instead, the ALJ presented the vocational expert with hypotheticals that included a sit/stand option. (Doc. 7-3, pp. 88–89). The vocational expert took into account Mr. Edwards's inability to sit for long periods of time when identifying jobs that Mr. Edwards could perform, and the ALJ's hypotheticals distinguished a situation in which an individual required a sit/stand option from one in which the individual was capable of sitting. (Doc. 7-3, p. 89). The vocational expert opined that adding a sit/stand option to the hypothetical

limitations would eliminate light work jobs that Mr. Edwards would otherwise be capable of performing, "but there would be similar jobs at the sedentary level." (Doc. 7-3, p. 88). Therefore, the vocational expert's testimony provided substantial evidence supporting the ALJ's finding that Mr. Edwards could perform jobs classified as sedentary.

## V. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner's decision. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 29, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE